# HYDE PARK GAS COMPANY
## v.
## HENRY KERBER ET AL.

1. CORPORATION — RECEIVER. — Where there is satisfactory evidence within the statute conferring power upon courts in such cases, to decree the dissolution of a corporation, and the court has decreed such dissolution, then in view of having to wind up its affairs and make distribution of its assets, a proper case for the appointment of a receiver is presented.

2. WHAT SHOULD BE CONSIDERED IN DECREEING A DISSOLUTION.—In decreeing the dissolution of a corporation by a court of equity, regard should be had, not only to its condition, but to the nature of the business carried on. Where a corporation is carrying on a *quasi* public business—that of supplying the means of lighting public streets, places of business, dwellings, etc.—and there are no judgments against it, and no creditors pressing their demands and it is performing its functions to the satisfaction of the public and it patrons, though making no dividends, the court should take all these thing into consideration, and should require proof of a clear case within the statute before decreeing its dissolution.

Hyde Park Gas Co. v. Kerber.

3. OFFICIAL BREACH OF TRUST—ACTION FOR—PARTIES.—A suit for the purpose of compelling the ministerial officers of a private corporation to account for a breach of official duty, or misapplication of corporate funds, should be brought in the name of the corporation; or if it appears that the directors refuse to prosecute, or if the corporation is still under the control of those who should be made defendants, then the stockholders will be permitted to file a bill in the their own names, making the corporation a party defendant.

4. HE WHO SEEKS EQUITY MUST NOT BE A PARTY TO THE FRAUD.—A suitor must come into a court of equity with clean hands, and a stockholder of a corporation, seeking to arraign its ministerial officers for breaches of trust, must himself be free from any participation in such breaches, or the misappropriation of the corporate funds or property.

5. DECREE APPOINTING A RECEIVER.—The decree of the court in this case, directing that one of the officers of the corporation pay to the corporation a certain sum found to be due, and in default thereof, that a receiver be appointed to take charge of the affairs of the corporation, is opposed to that spirit of justice which pervades all the true doctrines of equity jurisprudence, and ought not to be allowed.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed February 4, 1880.

This is an appeal by the Hyde Park Gas Company, a corporation, from the decree of the Superior Court of Cook county, appointing a receiver of the property, effects and business of said company, while it was in operation and without any decree for its dissolution, or the winding up of its affairs. The bill was brought by John F. Temple, one of the directors and the President of said corporation, but in the character of a stockholder, with whom was united as co-plaintiff one Kerber, who claims to be equitable owner of certain shares derived from Temple. All the individual directors, among whom was John C. Woolley, also the Treasurer, together with the corporation itself, were parties defendant. One feature of the bill was to procure an equitable division between Temple and Woolley of 241 shares of the stock of said company, purchased by them jointly. The other aspect of it is, an alleged breach of trust on the part of a majority of the directors, in the wrongful issue of divers second mortgage bonds and the sanction thereof by said majority of the stockholders, the pur-

chase by said Woolley of fourteen of said bonds, being one thousand dollars each, and alleging that they were purchased with moneys of the company in his hands as treasurer, and that he had fraudulently paid interest on them with the like funds. The bill prays that these bonds may decreed to belong to the corporation and surrendered up; that the defendants be en-joined from appropriating any more of said bonds; that Woolley may be decreed to pay to the company all the moneys misappropriated by him; that the corporation may be dissolved, a receiver appointed, and for general relief. On hearing on pleadings and proofs, the court did not decree a dissolution of the company. The decree finds that "the issuance of the second mortgage bonds of the Hyde Park Gas Company was wholly unauthorized; that twenty of said bonds were temporarily loaned to Partridge, and the said Hyde Park Gas Company received no consideration for the same; that the pledging of six of said bonds to Thomas Davies, and all the issues and transfers of the said second mortgage bonds were in fraud of the rights of said company and of its stockholders, and *ultra vires*, and in contravention of the purposes of the execution of said bonds and of the terms of the resolution adopted by said Hyde Park Gas Company providing therefor." After finding several other matters, the remainder of the decree, and so far as is material to the question involved, is as follows:

"The court further finds that in connection with the purchase of the one hundred and forty shares of the capital stock of said company held by said Henry F. Woolley, the said John C. Wooley improperly and wrongfully allowed and paid over to said Henry F. Woolley, and on account of such purchase, the sum of one hundred and fourteen dollars and —— cents, which amount the court adjudges and decrees shall be charged to said Henry F. Woolley in his accounts with said company. The court also adjudges and decrees that the said John C. Wooley and Henry F. Woolley are entitled to be credited with their services from the 18th day of March, 1878, when an order to that effect, limiting their salaries was entered in this cause, to an amount not exceeding in the aggregate the sum of one hundred dollars per month, and their accounts shall be cor-

rected accordingly.   Also that said company has not paid dividends for many years, and the said John C. Woolley is unable to pay said company the amount owing by him to it.   And it appearing to the court that there is good cause shown in this case for the appointment of a receiver of said company, it is therefore further ordered and decreed that unless the said John C. Woolley shall, within thirty days, take up, return and cancel said fourteen second mortgage bonds so wrongfully procured and held, or re-issued by him, and pay to said company the amount of his indebtedness to said company, as herein above adjudged, which indebtedness, after allowing credit for the amount paid by said Woolley for said bonds, such allowance to be made only on the return and cancellation of said bonds, is found at the date of this decree to be the sum of twenty-eight hundred and seventy-three and 80-100 dollars; then, and in such case such bonds shall not be taken up, returned and canceled within said time, and satisfactory evidence to that effect be within said time produced to the court and said indebtedness paid, Charles E. Morrison be, and he hereby is appointed receiver of said company, with all the usual powers of receivers in equity," etc.

The decree does not find that the Hyde Park Gas Co. was insolvent, had ceased to do business, or that there was any judgment, decree or execution against it.   The corporation alone appealed to this court, and assigns for error : 1, The rendition of said decree appointing a receiver.   2, In decreeing that the bonds described in the bill were not in equity the property of John C. Woolley.   3, The court erred in not dismissing the bill.

Messrs. Hitchcock, Dupee & Judah, for appellants; that no sufficient cause for winding up the affairs of the corporation was shown, cited Underwood's Stat. 1878, 332.

A court has no jurisdiction to manage a corporation for the purpose of carrying on its business, but only to close it up: Waters v. Taylor, 15 Ves. Jr. 10; Marten v. Van Schaick, 4 Paige Ch. 479; Wolbert v. Harris, 3 Halst. Ch. 605; Jackson v. De Forest, 14 How. Pr. 81; High on Receivers, § 480.

Messrs. DENT & BLACK, for appellees; that the court had power to appoint a receiver without determining at once the question whether the business of the corporation should be closed, cited Rev. Stat. 1877, Chap. 32, § 25; Ogilvie v. Knox Ins. Co. 22 How. 380.

The corporate property is in a large degree, as to creditors and stockholders, trust property: Adler v. Mil. Patent Brick Mfg. Co. 16 Wis. 63; Koehler v. Black River Falls Iron Co. 2 Black, 715.

In respect to matters of trust and to secure the rights of stockholders, the court had power, independently of the statute, to appoint a receiver: Blatchford v. Ross, 54 Barb. 42.

McALLISTER, J. By the decree in this case, if the defendant, John C. Woolley, did not within thirty days take up and return to the Hyde Park Gas Company, the defendant corporation, the fourteen second mortgage bonds in question, and pay to the corporation the sum of $2,873.80, which was adjudged to be due from him to said corporation, and did not produce to the court satisfactory evidence within that time that he had done so, then a receiver of the corporation was to be considered as appointed. If he complied, then there was to be no receiver under that decree. The non-performance, therefore, by a delinquent director of the corporation of that which in the view of a court of equity was due by such delinquent to the corporation, the injured party, was made the express ground of visiting upon the injured party the consequences of being deprived of the possession and management of its own property and business by the appointment of a receiver. This power of the court to take from a party in possession, and into its own hands, funds and property, some title to or the distribution of property or funds, is ultimately to be decided or made by the court for the purpose of preserving the property pending the litigation, is a power fully recognized, and in proper cases one of great usefulness; but at the same time its exercise is attended with such incidents and consequences as to render it one of the most delicate duties devolved upon a court of equity, and it is never to be resorted to except in a clear case, and

with great caution and circumspection. Bank v. Gage, 79 Ill. 207.

If there had been satisfactory evidence, of which there was none, of a case within the statute conferring power upon courts of chancery to decree the dissolution of corporations and wind up their affairs, and the court had decreed such dissolution, then, in view of having to wind up its affairs and make distribution of its assets among creditors, according to their priority, and the residue among the stockholders, in proportion to their interest, there would have existed a proper case for the appointment of a receiver awaiting the time of such final disposition.

But in decreeing the dissolution of a corporation by a court of equity, regard should be had to its condition not only, but to the nature of its business. This corporation was in operation. Considering the youth and growing prospects of the suburb in which it is located, the pressure of the times for the past few years, it was doing a very fair business. It was carrying on a *quasi* public business—that of furnishing the most desirable means in use at present for lighting dwellings, places of business and of public meetings; also the public streets. All these things should be taken into consideration upon the question of dissolution, and induce the court to require proof of a clear case within the law before it will enter such a decree. There were no judgments, orders or decrees against this corporation; and no creditors were pressing any demands against it. It was performing its *quasi* public functions with satisfaction to its patrons and the public, so far as the case shows; was keeping well above water, though making no dividends. It is comparatively a new enterprise and requires time for its development, as does the place of its location. There was no case shown for a dissolution, nor, as we think, for a receiver under the facts in evidence. There has been bad management and serious and reprehensible breaches of trust by individual ministerial officers; and in one aspect the bill in this case is for redress of those violations of trust. But the bill in this respect does not present the whole case; nor are the parties involved in those violations ranged as they should be.

" The general rule is, that a suit brought for the purpose of compelling the ministerial officers of a private corporation to account for a breach of official duty, or misapplication of corporate funds, should be brought in the name of the corporation, and cannot be brought in the name of the stockholders, or some of them." Ang. & Ames on Corp. Sec. 312, and cases in note 1. To such a rule there are, of course, exceptions. And the same authors say: " But as a court of equity never permits a wrong to go unredressed merely for the sake of form, if it appears that the directors of a corporation refuse in such case to prosecute, by collusion with those who had made themselves answerable by their negligence or fraud, or if the corporation is still under the control of those who must be the defendants in the suit, the stockholders, who are the real parties in interest, will be permitted to file a bill in their own names, making the corporation a party defendant." Ib. note 4.

The bill in this case, in one feature, is under that theory. It contains this allegation: " That your orator, John F. Temple, is the principal stockholder of said Hyde Park Gas Company in respect to all the stock that has any footing; that your orator, Henry Kerber, is the equitable owner of 36 shares of the stock of said company, to be taken out of the number of shares which has so heretofore belonged to your orator, John F. Temple."

This blind statement is all there is in the bill relating to the interest of Kerber, and we cannot but regard him as a mere adjunct to Temple, who is the real and substantial, the sole plaintiff in the suit. It is therefore at his instance virtually that a decree has been rendered declaring that the issuance of the second mortgage bonds was unauthorized; that twenty of them were temporarily loaned to Partridge, and that the Hyde Park Gas Company received no consideration therefor; that the pledging of six of the bonds to Davies and all the issues and transfers of said second mortgage bonds were in fraud of the rights of said company and its stockholders. Now, if there are any grounds for the appointment of a receiver, back of those stated provisionally in the decree, it is these several matters found by the decree and above stated.

It is a familiar rule of equity jurisprudence that a suitor must come into a court of equity with clean hands. Thus, if a party seeks to set aside a transaction for fraud, he must himself be free from any participation in the fraud. If he come as a stockholder of a corporation to arraign ministerial officers of such corporation for breaches of trust, he himself must be free from any participation in such breaches, or the misappropriation of the corporate funds or property. What, then, are the facts which go to constitute the whole case, part of which only are set out in the bill and found by the decree? As to the original issue of the second mortgage bonds, the evidence clearly shows that Temple participated to the same extent that John C. Woolley did, only that the former acted as President, and the latter as Secretary of the Gas Company; so that if that act was unauthorized and in fraud of the rights of the company and its stockholders, Temple, the plaintiff in this suit, was a participator in that fraud. Then, as to the fourteen second mortgage bonds which the decree requires Woolley to take up and cancel, and return to the company in thirty days, under the evidence Temple should have been included in that requirement. What are the facts in regard to those bonds? There was a corporation in Michigan—The Northwestern Gas and Water Pipe Company —of whose stock Temple owned $25,400 and Woolley $12,000. After these parties had issued some thirty of these second mortgage bonds of the Hyde Park Gas Co., the Partridge mentioned in the decree came here as agent of the Michigan corporation, and proposed borrowing a portion of these bonds for the Michigan corporation, and Temple and Woolley being both stockholders in the latter, loaned to it twenty of those bonds for one thousand dollars each without security or consideration. This was a plain, palpable breach of trust on the part of the President and Secretary of the Hyde Park Gas Co., for which they both made themselves liable to the corporation of which they were such officers as for a wrongful conversion of those bonds. What is the sequel? Why the Michigan corporation, as was to be expected, turned them out here and there as security either for loans or debts; six of them got stolen from a bank in Michigan and have not since been heard from; the

remaining fourteen were thrown upon the market. The North-western Gas and Water Pipe Co. became insolvent, and these fourteen bonds coming upon the market, Temple talked of buying them, but Woolley got them for fifteen cents on the dollar, paid for them with corporate funds which the court has decreed he shall pay back, and now Temple demands the appointment of a receiver, because these fourteen bonds have been transferred in fraud of the rights of said corporation and its stockholders, of which he is the principal as respects all the stock of said company that has any footing.

Nor is this all; the preponderance of the evidence shows that Temple, as President, consented to the pledging of six of the second mortgage bonds to Davis, also mentioned in the decree.

This bill was filed in several aspects, the first of which was for the court to make an equitable partition between Temple and Woolley of 241 shares of the Hyde Park Gas Co.'s stock, as to which Kerber had nothing to do, and the corporation was but a formal party. Secondly, for redress to the corporation for the various breaches of trust on the part of Woolley, as respected the unauthorized issuance and fraudulent transfer of the fourteen second mortgage bonds and misapplication of corporate funds. As to that part of the case, the corporation is theoretically the plaintiff, and any decree would be in its favor and not in that of the stockholders. Then the third aspect is that of using these breaches of trust in issuing and transferring the bonds, misappropriation of the funds, etc., against the corporation, and asking for a dissolution of the corporation, or at all events a receiver. In that aspect Temple is the real plaintiff, and the rule of equity that a suitor must come into its court with clean hands applies. The facts show that he should have been made defendant by some other actual stockholder, if any there be, who has not participated in these breaches of trust. Joining Kerber as a complainant cannot relieve the court from looking at Temple's relation to, and participation in, the matters in question.

The other condition was that a receiver should be appointed unless Woolley paid to the corporation, in thirty days, the sum

of $2,873.80, which had been adjudged against him.    The decree previously finds that he is unable to pay it.    The logic of the decree is this:    Woolley is the debtor, the Hyde Park Gas Co. is the creditor; the former owes the latter $2,873.80, which he is unable to pay; but if this debtor shall not pay his debt· in thirty days, the creditor shall be punished by being thrown into the hands of a receiver.    In principle this is very much like sending the creditor to jail because his debtor cannot pay him, and is so opposed to that spirit of justice which pervades all the true doctrines of equity jurisprudence that it will not bear discussion.

   The decree of the court below, so far as it relates to the appointment of a receiver of the Hyde Park Gas Company, will be reversed.    In all other respects it is affirmed.

Reversed in part.